BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
KATHERINE HORWITZ, OKLAHOMA STATE BAR NO. 30110
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:24-cr-00245-BLW |
| Plaintiff, | **UNITED STATES'S SENTENCING MEMORANDUM** |
| vs. | |
| LUKE J. ESTEP, | |
| Defendant. | |

The defendant, Luke J. Estep, comes before the Court for sentencing pursuant to a plea agreement under Federal Rule of Criminal Procedure 11. In accordance with the agreement, the defendant has entered a plea of guilty to Count 1 charging him with unlawfully dealing in firearms in violation of 18 U.S.C. § 922(a)(1). The government now joins in the U.S. Probation Office's recommendation of 60 months' imprisonment. As detailed herein, the defendant trafficked in hundreds of deadly weapons—in blatant disregard of the firearms laws and regulations. As a direct consequence of his refusal to follow these laws, at least 16 firearms that the defendant trafficked to third parties have been used in other serious, violent criminal offenses.

1

## I.    Factual Background

During this investigation, Special Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) discovered that the defendant illegally dealt and manufactured hundreds of firearms out of his Boise home for more than two years. Largely, the defendant listed the firearms on a local platform, Z-Idaho. Initially, ATF began investigating the defendant after local law enforcement stumbled into several firearms during various criminal investigations that were originally purchased by the defendant. In total, and as described *infra*, at least 16 firearms purchased by the defendant have been used in Idaho and California to commit crimes, including violent offenses, drug trafficking, gang activity, and shootings. Concerned with this pattern, ATF paired up with Meridian Police Department to conduct undercover purchases from the defendant.

On October 10, 2024, an undercover officer (UC) purchased a Geisler 19x ported handgun from the defendant at his Boise home. Presentence Investigation Report (PSR), ECF 55, ¶¶ 13–14. To arrange this sale, the UC texted the defendant to arrange the transfer of the firearm in the defendant's garage. *Id.* The UC paid the defendant $600 for the firearm. The firearm in this undercover purchase was a "ghost" gun, meaning that it had no serial number, manufacturer markings, and could not be traced to the original manufacturer. *Id.* During the sale, the defendant highlighted how this ghost gun had no registration. Law enforcement continued their investigation by conducting a second undercover purchase.

This time, the defendant sold the UC a custom built "ghost lower ar" they had discussed the day before. *Id.* ¶ 14. The Defendant met with the UC in the defendant's garage and exchanged two firearms for $1150 cash. The first firearm was a Beretta, APX model,

9mm pistol, bearing serial A194062X and came with two magazines, grips, a safety lock, a loader and a Beretta pistol carrying case for $450. The second firearm was an unknown manufacturer, unknown model, 5.56 caliber rifle, bearing no serial number (as designed) for $700. Additionally, the defendant sold the UC a 20-round box of PMC 5.56 ammunition for $10.

During the undercover purchases, the defendant made several admissions that demonstrated his flagrant violation of the law against dealing in firearms. When asked by the UC whether he has ever been in trouble or approached by law enforcement, the defendant admitted that the federal firearm licensed seller (FFL) from whom he purchases firearms "doesn't do it all completely legal." The defendant then described how the FFL "spaces out" his purchases of 4 or 5 "lowers" to look like he was only purchasing one a day to avoid regulations and holds. *Id.* ¶ 14.

The UC also asked the defendant: "I don't have to worry about law enforcement with these, do I?" The defendant responded by relaying the only time he encountered a sheriff's deputy was when a felon had a weapon registered to him. The defendant then described a hold he had received from Cabela's when he was 18. He admitted that he has been selling firearms for three years at a rate of "10'ish" to 15 registered firearms a month. *Id.* When the UC asked whether he should be worried about ATF, the defendant responded: "Not really, no. With me maybe, but not with you. Because once it's out of my hands . . . I don't know . . . good luck finding it. That's the nice thing about no paperwork. . . . I've only had a few people ask for paperwork. That's kind of the point of a private sale. They think I have it. If something does happen to it, I can look up at the FFL and  be like, hey this was stolen if it shows up. Then we can just give it back to the customer."

3

The defendant continued by relaying how he keeps enough firearms and frames in his house so that ATF won't find the absence of firearms in his house suspicious (should they ever come asking).

Z-Idaho records corroborate the defendant's pronounced volume of sale. In those records, the defendant listed more than 150 firearms for sale on its platform over the past two and a half years. *Id.* ¶ 19. In most of the posts, the defendant lists the firearm as "brand new" and has listed dozens of the same make, model, and style of firearm. Idaho Department of Labor likewise confirms his vast sales: the defendant has not listed an employer or income for the last four years; yet, between 2016 and 2020, he indicated self-employed income of $40,000. *Id.* ¶ 21.

In November of 2024, ATF executed warrants to search the defendant's house, car, and email account. *Id.* ¶¶ 15–16. The former two were searched by agents who discovered a bevy of firearms, manufacturing material, ammunition, and an unregistered, 3-D-printed silencer in the garage of the house. *Id.* Agents also discovered a 3-D printer in the garage of the house, which both roommates indicated belonged to the defendant. *Id.*

FFLs associated with the defendant and the paperwork for the defendant's purchases of serialized firearms confirmed the disturbing pattern: namely, the defendant's repeated purchases of the same firearms on the same day for resale to third parties—despite indicating that the firearms were for himself. *Id.* ¶¶ 17–18. Two FFLs relayed to ATF agents that they had warned the defendant not to resell firearms. *Id.* These FFLs even stopped selling to the defendant because they were concerned with the defendant's statements that he was "selling out" of his firearms quickly. *Id.*

## II.    Sentencing Considerations

In imposing an appropriate sentence in this case, the Court is called upon to consider both the Sentencing Guidelines and the statutory sentencing factors enumerated in 18 U.S.C. § 3553.

### A.    The Guideline Sentence

The guideline sentence in this case is 60 months of imprisonment—the statutory maximum sentence. *See* 18 U.S.C. § 922(a)(1)(A). This guideline range is reached because the Total Offense Level of 26 and a Criminal History Category of II results in a range of 70 to 87 months imprisonment, which is above the statutory maximum sentence for the offense of conviction. Under the guidelines, therefore, the range becomes the statutory maximum sentence. U.S.S.G. § 5G1.1(a).

#### 1.    Base Offense Level

The Probation Office correctly applied a base-offense level of 18 under U.S.S.G. § 2K2.1(b)(5) because the offense involved a firearm described in 26 U.S.C. § 5845(a), namely, a 3-D printed silencer. This finding is amply supported by the evidence before this Court. First, the silencer was discovered among other firearm accessories in the defendant's garage, which both of his roommates relayed to law enforcement belonged to the defendant. This 3-D printed silencer also connects to a file path discovered in the memory card for the defendant's printer, alongside file paths for Drop in Auto Sears (a mechanism for converting a firearm into a fully automatic weapon). PSR ¶ 16.

Citing his own expert report, the defendant nevertheless contends that the government has not satisfied its burden of establishing that the silencer was intended to muffle the sound of a firearm or that it would even function properly. *See* Objection, ECF

54, at 4–7. Since that objection was raised, the government has submitted the silencer for additional testing, which established the operability of the silencer when used to shoot a firearm. *See* Ex. 1 (supplemental report test-firing silencer). Additionally, ATF agents confirmed that the silencer worked with the firearms discovered in the defendant's house by attaching the silencer to firearms seized from the defendant's home. Thus, his objection ignores the factual context in which this evidence was seized, as well as the functionality of the silencer with his own firearms.

During the sentencing, the government anticipates putting on additional evidence related to the defendant's sole objection to the PSR. Based on this anticipated evidence, as well as the facts articulated in the PSR, the government submits that sufficient evidence exists for this Court to find by a preponderance of the evidence that the defendant possessed a homemade silencer as part of the offense, and to apply the base offense level of 18 under U.S.S.G. § 2K2.1(a)(5).

### 2.    Upward Adjustment for Number of Firearms and Unserialized Firearms

The government agrees with the Probation Office that the Total Offense Level should be adjusted upward by 12 levels pursuant to U.S.S.G. § 2K2.1(b)(1)(D) and (b)(4)(B), based on the hundreds of firearms involved in the offense and unserialized firearms. As detailed in the PSR, the defendant dealt in hundreds of firearms—some are traceable because they were manufactured by third parties, but many were not because he printed them in his home. Thus, the estimated 100 to 199 firearms is a conservative estimate. This adjustment brings the Total Offense Level to 29.

### 3.    Downward Adjustment for Acceptance of Responsibility

The government agrees with the Probation Office that the defendant has demonstrated acceptance of responsibility by entering a guilty plea, entitling him to a two level downward adjustment pursuant to U.S.S.G. § 3E1.1(a). Additionally, the government hereby moves for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b), on the basis that the defendant timely notified authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. Accordingly, the government submits that the defendant's offense level should be adjusted downward by a total of three levels for acceptance of responsibility, to a Final Offense Level of 26.

### B.    Criminal History Category

The government agrees with the Probation Office that the defendant's Criminal History Category under the Sentencing Guidelines is II.

## III.    18 U.S.C. § 3553

The sentencing factors articulated in 18 U.S.C. § 3553 warrant the guideline-range sentence here: the defendant repeatedly flouted the law by introducing untraceable, dangerous weapons into the community for his own financial benefit. He did so with a complete understanding of the firearm regulations and total disregard for the same. Thus, the nature of the offense, protecting the community, the need to deter criminal conduct and promote respect for the law all call for a guideline-range sentence here.

### A.    The Nature and Circumstances of the Offense

The nature and circumstances of the instant offenses are largely aggravating. By announcing his motive, the defendant clearly broadcast the message that he believed the

7

firearm laws and regulations were not applicable to him. The effects of his total disregard for the law extend well beyond himself.

Of the firearms that are traceable, 16 have been used in other crimes around the Treasure Valley and California:

| No. | Firearm | Date Estep Purchased | Date Law Enforcement Recovered | Crime | Time to Crime |
|---|---|---|---|---|---|
| 1 | Palmetto State Armory, model Dagger Full Size-S, 9mm caliber pistol, bearing serial number DEB00815 | 11/5/22 | 11/21/24 | Unlawful possession of a firearm by a convicted felon | 747 days |
| 2 | Glock GMBH, model 19, 9mm caliber pistols, bearing serial number BXPK930 | 11/26/22 | 4/11/23 | Prohibition of possession of certain weapons by a minor | 136 days |
| 3 | Palmetto State Armory, model Dagger compact, 9mm caliber pistol, bearing serial number JJE19645 | 12/27/22 | 4/14/23 | Aggravated assault with deadly weapon | 108 days |
| 4 | Masterpiece Arms, model MPA30, 9mm caliber pistol, bearing serial number FX40500 | 12/1/22 | 7/25/23 | Possession of controlled substance, Possession of drug paraphernalia | 236 days |
| 5 | Tisas, Zig M 1911, 9mm caliber pistol, bearing serial number T0620-23Z36493 | 10/25/23 | 3/25/25 | Felony possession of a controlled substance, Unlawful possession of a firearm | 517 days |

| | | | | | |
|---|---|---|---|---|---|
| 6 | Combat Armory, model CA19, 9mm caliber pistols, bearing serial number 99007404 | 12/19/23 | 7/12/24 | Unlawful possession of a firearm by a restricted person | 206 days |
| 7 | Combat Armory, model CA19, 9mm caliber pistols, bearing serial number 99007423 | 12/19/23 | 6/11/24 | Located during search of a vehicle where neither occupant claimed the firearm | 175 days |
| 8 | Combat Armory, model CA15, 5.56 caliber pistol, bearing serial number AA96358 | 3/3/23 | 8/9/23 | Murder (attempted) on a Peace Officer; Aggravated assault; Unlawful discharge at a house, occupied building, Possession of Controlled Substance | 159 days |
| 9 | Palmetto State Armory, model Dagger Compact, 9mm caliber pistol, bearing serial number JJE71402 | 3/9/23 | 2/4/24 | Felony possession of controlled substances, Drug Paraphernalia, Use or Possess with Intent to Use, Injury to Child | 332 days |
| 10 | SCT Manufacturing, model SCT 19, 9mm caliber pistol, bearing serial number AAA0008051 | 4/30/23 | 5/13/25 | Felon in possession of a firearm (Federal) | 744 days |
| 11 | Glock GMBH, model 19, 9mm caliber pistols, bearing serial numbers BZAZ062 | 2/27/23 | 4/11/23 | Prohibition of possession of certain weapons by a minor | 43 days |
| 12 | SCT Manufacturing, model SCT 19, 9mm caliber pistol, bearing serial number AAA0007920 | 10/25/23 | 8/29/25 | Firearm forfeited by LE after being claimed by an intoxicated underage person | 674 days |

| 13 | SCT Manufacturing, model SCT 19, 9mm caliber pistol, bearing serial number AAA0008039 | 5/30/23 | 8/19/23 | Unlawful possession of a firearm, Weapon-Unlawful possession of any handgun by minor | 81 days |
|---|---|---|---|---|---|
| 14 | Combat Armory, model CA19, 9mm caliber pistol, bearing serial number 99008938 | 1/20/24 | 1/3/25 | Felon in Possession (Federal) | 348 days |
| 15 | Anderson Manufacturing, AM-15, 5.56 caliber pistol, bearing serial number 23117086 | 4/5/24 | 7/9/25 | Attempted Possession with Intent to Distribute a Controlled Substance (Federal) | 460 days |
| 16 | Combat Armory, model CA19, 9mm caliber pistol, bearing serial number 99009816 | 7/24/24 | 9/28/25 | Unlawful concealed carry of a firearm in a vehicle, Unlawful carrying a loaded firearm in public | 431 days |
| 17 | Pietro Beretta, model APX, 9mm caliber pistol bearing serial number A194062X | 10/12/24 | 10/16/24 | Sold to undercover officer during | 4 days |

The defendant put each of the above-listed firearms into the hands of those who committed this serious, litany of violent crimes and drug offenses. By circumventing the firearm laws and regulations, the defendant introduced hundreds of deadly weapons into the illegal gun market. The defendant's criminal conduct here directly fueled violent crime. This was not an innocent oversight on the defendant's part: he understood the firearm regulations and laws and admittedly evaded these for his own personal financial gain. The circumstances of his offense are, therefore, aggravating.

10

**B.**     **Need to Promote Respect for the Law and Protect the Community**

The defendant appears to have led a mostly law-abiding life until his twenties, when he committed the instant offense. Based on information learned during this investigation, he began explicitly trafficking in unregistered firearms on a large volume years ago—in blatant violation of the federal law and regulations.

Most troubling, one aspect of the defendant's attitude remains aggravating with respect to the instant offense. There is seemingly no explanation for the defendant's repeated, blatant violations of the federal laws governing firearms. Despite multiple warnings, the defendant continued to traffic deadly weapons to those whom the law deemed as too dangerous to possess them—and for good reason. As described previously, the firearms the defendant purchased for others (who were prohibited from possessing any firearm) repeatedly put citizens and law enforcement in life-threatening harm. This consequence is entirely foreseeable to someone in the defendant's position. Regardless, and seemingly with no explanation, the defendant acted on an existing and continuous willingness to ignore the law. This repeated, shameless disrespect of the law and danger to the community warrants a term of imprisonment.

**IV.**     **Government's Sentencing Request**

The government believes that the guideline-range sentence here appropriately reflects the need to protect the community from illegally firearm trafficking. In light of the defendant's flagrant disregard for the laws and regulations governing firearm sales, a guideline-range sentence appropriately promotes respect for the law and reflects the seriousness of the offense.

11

Accordingly, the government respectfully requests that the Court sentence the defendant to 60 months' imprisonment to be followed by two years of supervised release.

Respectfully submitted this 12th day of May, 2026.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

*/s/ Katherine Horwitz*
KATHERINE HORWITZ
Assistant United States Attorney